[No. 23394.   Department One.   December 21, 1931.]

UPSTARTER COMPANY, INC., *Respondent,* v. GRANT AUTO ELECTRIC COMPANY, *Appellant.*[1]

*Reynolds, Ballinger, Hutson & Boldt,* for appellant.
*Arthur H. Hutchinson,* for respondent.

PARKER, J.—The plaintiff, Upstarter Company, Inc., commenced this action in the superior court for King county seeking recovery of a claimed balance due it upon sales of upstarters made by it to the defendant, Grant Auto Electric Company. The defendant responded by cross-complaint, claiming damages against the plaintiff, in excess of its claim, alleged as the result of a breach by the plaintiff of a contract between them relating to prospective sales of upstarters from the plaintiff to the defendant.

The cause proceeded to trial in the superior court, resulting in findings and judgment awarding to the plaintiff recovery against the defendant in the sum of $272.40, as the balance owing by the defendant for upstarters sold to it by the plaintiff, and denying to

[1]Reported in 6 P. (2d) 392.

the defendant recovery of any damages as set-off or counterclaim. From this judgment, the defendant has appealed to this court.

We think the controlling facts may be sufficiently summarized as follows: The so-called "upstarter" here in question is manufactured and sold to the trade by the plaintiff. It is designed as an attachment to model A Ford automobiles. Early in March, 1930, Mark Elliott, representing the plaintiff, called upon the defendant at its place of business in Seattle, with a view of selling upstarters to it. Negotiations then had resulted in a tentative contract being then prepared in typewriting and signed, as follows:

"AGREEMENT

"Between the UPSTARTER COMPANY of Texas and GRANT AUTO ELECTRIC COMPANY of Seattle, Washington, made this 1st day of May, 1930.

"WITNESSETH: That the party of the first part agrees to assign such territory as in this agreement, providing the party of the second part fulfills their contract; the territory being as follows:

"State of Washington.

"This agreement to extend for one year, and to include forty-five — (4500) Upstarters to be sold by party of the second part during the period of this agreement.

"The price and discount on Upstarters will be $3.50 each to the party of the second part, with discounts as follows:

"$3.50 less 50, less 10, less 5—and less 2% for cash on or before the 10th of each month. All prices F. O. B. Seattle.

"It is agreed by the parties hereto that the party of the second part is to order each month four hundred Upstarters, making a total for the year of 4500, which is the quota allotted them; after such quota has been made, there will be a straight discount of 60% retroactive on the entire quota.

"It is further agreed that the second party will be held responsible by the first party for all goods shipped and received by party of the second part.

"IN WITNESS THEREOF, we have hereunto set our hands and seals the day and year first above written.

"UPSTARTER COMPANY, INC.
"By: Mark Elliott
"GRANT AUTO ELECTRIC COMPANY, INC.
"By: H. P. Grant, Pres."

Elliott was not an officer of the plaintiff, and did not have authority to make such contract other than subject to confirmation by the proper officers of the plaintiff. The defendant then ordered from the plaintiff, through Elliott, one hundred and twenty-five upstarters, which were shipped and billed to it on March 15, 1930. Later, at different times, the defendant ordered from the plaintiff two hundred and seventeen additional upstarters. These were shipped and billed to it on and prior to May 5, 1930. None was thereafter ordered by the defendant or shipped by the plaintiff. It was to recover the balance owing for those upstarters that this action was commenced by the plaintiff.

The above quoted tentative contract looking to sales of upstarters by the plaintiff to the defendant during the year following May 1, 1930, was never signed by any officer of the plaintiff. We may assume, however, for present purposes, that it was sufficiently confirmed by the plaintiff as of May 1, 1930, the date it bears.

Sometime prior to that date, the plaintiff had sold to the mail order concern of Sears, Roebuck & Company a considerable number of upstarters; the record in this case being uncertain as to the number so sold. A small quantity of them was shipped to the branch of that concern at Seattle, evidently contemplating their sale in the state of Washington. None was sold by the

plaintiff to Sears, Roebuck & Company thereafter, so far as can be determined by this record. The large catalogue of that concern, issued and distributed by it throughout the state of Washington, as elsewhere in the United States, in large numbers, contained a very brief, printed advertisement, one by two inches in size, offering upstarters, evidently of plaintiff's make, though plaintiff's name was not mentioned therein, at $1.98 each, postpaid. This same advertisement also appeared in the catalogue similarly issued and distributed by Sears, Roebuck & Company in the fall of 1930.

The contentions here made in behalf of the defendant, as we understand them, are rested upon the theory that the plaintiff breached the contract of May 1, 1930, in that it failed to secure to the defendant an exclusive market in the state of Washington, during the year following May 1, 1930, for the sale therein of upstarters, even to the exclusion of sale of upstarters by Sears, Roebuck & Company from these sold to that concern by the plaintiff sometime prior to that date.

We may concede, for present purposes, that the plaintiff by the contract became obligated not to sell upstarters in the state of Washington, or for resale therein, other than to the defendant during the year following May 1, 1930, providing the defendant "fulfills their contract;" which means, among other things, that it "order each month four hundred upstarters." We have seen that the defendant did not order any upstarters during any of the months of the contract period other than a very limited number billed and shipped to it on May 5, 1930. We are assuming, for present purposes, that those were ordered after May 1st of that year, though the record does not affirmatively so show.

We are of the opinion that the contract did not obligate the plaintiff to prevent the sale in the state of Washington of upstarters which it had sold to Sears, Roebuck & Company prior to May 1, 1930; in other words, by the contract the plaintiff did not guarantee to the defendant a wholly virgin market in the state of Washington during the year following May 1, 1930. The evidence, we think, warrants the conclusion that the plaintiff has not invaded, caused to be invaded or sanctioned the invasion of defendant's market in violation of any of the terms of the contract. We fail to see any ground for awarding to the defendant damages as against the plaintiff.

It is not here contended but that $272.40 is the correct, unpaid balance of the agreed purchase price of the upstarters sold and delivered as above noticed.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, HERMAN, and BEELER, JJ., concur.